UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

KIMBERLYANN SIWY :
:
v. : C.A. No. 16-011ML
:
CAROLYN COLVIN, Acting :
Commissioner of the Social Security :
Administration :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") and Social Security Insurance ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed her Complaint on January 13, 2016 seeking to reverse the decision of the Commissioner. On July 31, 2016, Plaintiff filed a Motion for Reversal of the Disability Determination of the Commissioner. (Document No. 10). On September 19, 2016, the Commissioner filed a Motion to Affirm Her Decision. (Document No. 13). Plaintiff filed a Reply Brief on October 22, 2016. (Document No. 15).

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record, the parties' submissions and independent research, I find that there is substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that Plaintiff's Motion for Reversal (Document No. 10) be DENIED and that the Commissioner's Motion to Affirm (Document No. 13) be GRANTED.

## I. PROCEDURAL HISTORY

Plaintiff filed applications for DIB (Tr. 208-214) and SSI (Tr. 215-223) on September 21, 2012 alleging disability since June 14, 2012. The applications were denied initially (Tr. 79-84, 86-92) and on reconsideration. (Tr. 95-107, 108-120). Plaintiff's date last insured is March 31, 2015. Plaintiff requested an Administrative Hearing. On February 24, 2014, a hearing was held before Administrative Law Judge Martha Bower (the "ALJ") at which time Plaintiff did not appear. The ALJ dismissed the request for hearing. (Tr. 74-78). A second hearing was held on June 24, 2014, at which time Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified. (Tr. 42-73). The ALJ issued an unfavorable decision to Plaintiff on August 6, 2014. (Tr. 11-28). The Appeals Council denied Plaintiff's request for review on November 12, 2015. (Tr. 1-3). Therefore the ALJ's decision became final. A timely appeal was then filed with this Court.

## II. THE PARTIES' POSITIONS

Plaintiff argues that the ALJ committed several errors in her review of the medical opinion evidence, her RFC finding, her credibility determination and her development of the record.

The Commissioner disputes Plaintiff's claims and contends that the ALJ's RFC assessment and non-disability finding are fully supported by substantial evidence and must be affirmed.

## III. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274

F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

## IV. THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C.

§§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

**A. Treating Physicians**

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(c). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(c)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B. Developing the Record**

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

**C. Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative

examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

**D. The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability. Id.

**E. Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Seavey, 276 F.3d at 5. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids"). Seavey, 276 F.3d at 5. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills. Nguyen, 172 F.3d at 36. In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Heggarty, 947 F.2d at 996. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary

to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

**1. Pain**

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

(1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

(2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

(3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;

(4) Treatment, other than medication, for relief of pain;

(5) Functional restrictions; and

(6) The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

### 2. Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V. APPLICATION AND ANALYSIS

### A. The ALJ's Decision

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 14, 2012, her alleged onset date. (Tr. 16). Next, at Step 2, the ALJ determined that Plaintiff had the following severe impairments: organic mental disorders, affective disorders and anxiety-related disorders. Id. At Step 3, the ALJ opined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a Listed Impairment. (Tr. 17). Before proceeding to Step 4, the ALJ found that Plaintiff retained the functional capacity to:

> perform a range of work at all exertional levels with the following nonexertional limitations. [Plaintiff] would have a limitation in maintaining concentration, persistence or pace with the ability to understand, remember and carry out simple tasks. She would have a

> limitation in social interactions, requiring an object-oriented task with only occasional work-related interactions with the general public.

(Tr. 18-19). Given that RFC, the ALJ found at Step 4 that Plaintiff could not perform her past relevant work. (Tr. 26). Finally, at Step 5, the ALJ determined that Plaintiff could perform other unskilled work existing in significant numbers in the national economy. (Tr. 27). Therefore, she concluded that Plaintiff was not disabled within the meaning of the Social Security Act. Id.

**B. The ALJ Did Not Rely on Defective Evidence**

Plaintiff's first argument is that the ALJ erred by affording "considerable weight" to the opinion of Dr. Brooks-Warren because it is a "clearly defective piece of evidence." (Document No. 10-1 at p. 12). She contends that Dr. Brooks-Warren "did not document" any functional limitations in her report as required. Id. However, this argument is completely unsupported by the record and Plaintiff at least partially concedes as much in her Reply Brief. (Document No. 15 at p. 2).[1]

Dr. Brooks-Warren is a psychiatrist who reviewed Plaintiff's records as of March 22, 2013 at the reconsideration stage. (Tr. 104). The ALJ gave her opinion "considerable weight" since it was "supported by and is consistent with the record as a whole." (Tr. 24-25). Contrary to Plaintiff's argument that Dr. Brooks-Warren's opinion lacked any narrative explanation for each category of mental limitation, she clearly included an asterisk on the form when asked for a narrative discussion of the limitations, and then, under the heading "MRFC – Additional Explanation," she again referenced the asterisk and provided a narrative discussion about each category of limitation. (Tr. 103-104, 116-117). Specifically, Dr. Brooks-Warren opined that Plaintiff "has the ability to understand and remember simple instructions," "has the ability to attend and concentrate for periods of two hours as is required in the

---

[1] Despite the lack of factual support, Plaintiff only concedes that the Commissioner's response "appears to have some merit" and that Dr. Brooks-Warren made "at least an attempt" to opine on her functional limitations. (Document No. 15 at p. 2). Giving Plaintiff's counsel the benefit of the doubt, I conclude that he misread the opinion and did not intentionally make a baseless argument to the Court.

workplace," "has the ability to interact appropriately with peers and supervisors" but "should not work with the public," and "has the ability to adapt to routine workplace changes." (Tr. 104, 117). As the ALJ accurately pointed out (Tr. 23), Dr. Brooks-Warren also provided a more detailed explanation in the "PRT – Additional Explanation" Section of the form, noting that "[w]hen compliant with treatment and medication," Plaintiff's mental status examinations show that she is alert and oriented, with "no greater than moderate limitations" in her memory and cognitive skills. (Tr. 101, 114). Because Dr. Brooks-Warren provided a narrative discussion of each mental limitation (Tr. 101, 104, 114, 117), Plaintiff's argument that her opinion is defective is unsupported, and the ALJ did not err in relying upon the opinion. (Tr. 24-25).

### C. There is no Basis for Plaintiff's Argument that the ALJ and Dr. Brooks-Warren Reviewed an Incomplete Record

Plaintiff contends that there is "no evidence that either the ALJ or Dr. Brooks-Warren ever considered the earliest treatment notes from [her] prior therapist [Mr. Figueira]...which began with an initial assessment on January 23, 2012." (Document No. 10-1 at p. 14). Plaintiff's primary support for this contention is that one page of the records (Tr. 559) contains a received date-stamp of August 26, 2013, five months after Dr. Brooks-Warren reviewed the file. (Document No. 10-1 at p. 14).

Once again, Plaintiff's argument is unsupported by the record. First, as to the ALJ, the argument is an absolute non-starter. The ALJ references Exhibits 6F, 7F, 8F and 22F in her decision and specifically discusses a psychiatric evaluation completed by Dr. Kooper on February 6, 2012. (Tr. 20, 395). These Exhibits include records dating back to the January 23, 2012 intake assessment completed by Mr. Figueira at Anchor Counseling. (Tr. 559-563). Further, the received date-stamp of August 26, 2013 is completely consistent with the timing of the compilation of the record for the ALJ who heard the case. (Tr. 143, 151). Second, as to Dr. Brooks-Warren, it is clear that she reviewed a significant number of treatment records from Anchor Counseling. (Tr. 101). While the "2/6/12 – 8/8/12" date range

referenced may not have included the January 23, 2012 intake assessment completed by Mr. Figueira, it did include the February 6, 2012 "psychiatric intake assessment" completed by Dr. Kooper which contains a full history and diagnostic assessment. (Tr. 391-395). Thus, even if Dr. Brooks-Warren did not have access to the January 23, 2012 intake assessment, Plaintiff has not shown how that cumulative report would have altered Dr. Brooks-Warren's functional assessment. Accordingly, any error in this regard would be harmless.

**D. There is no Basis for Plaintiff's Argument that the ALJ "Predetermined" the Weight Afforded to the Opinion of Dr. Brooks-Warren**

As previously noted, the ALJ afforded "considerable weight" to the opinion of Dr. Brooks-Warren because it was "supported by and consistent with the record as a whole." (Tr. 24-25). The ALJ also concluded that "[e]vidence submitted after Dr. Brooks-Warren gave her opinion...does not warrant a change in the weight afforded to the opinion." (Tr. 25). Plaintiff argues that the ALJ improperly "predetermined" the weight to be given to this opinion and "presumed" its validity. (Document No. 10-1 at p. 13). She also argues that there was no basis for the ALJ's conclusion that Dr. Brooks-Warren would have rendered the same opinion after reviewing subsequent medical records. Id. at p. 16. In other words, Plaintiff contends that the ALJ erred by effectively giving controlling weight to an opinion that was more than one year old by the time it was adopted. (Document No. 15 at p. 5).

Plaintiff does not, however, specifically explain how these later treatment notes call into question the validity of Dr. Brooks-Warren's opinion. (Document No. 10-1 at pp. 14-16). In fact, in her Reply Brief, Plaintiff notes the consistency and acknowledges that "most of [Dr. Brooks-Warren's opinion] is just a less specific statement of what is contained in Dr. Stemp's more recent and thorough opinion." (Document No. 15 at p. 4). Plaintiff does not identify, in either her initial or reply Briefs, any subsequent treatment records showing any sustained or material worsening of Plaintiff's condition which would invalidate the earlier opinion of Dr. Brooks-Warren. See Allen v. Colvin, C.A. No. 13-781L, 2015 WL

906000 at *14 (D.R.I. Mar. 3, 2015). In addition, there is nothing in the record or the ALJ's decision to suggest that the ALJ either predetermined or presumed anything about the opinion of Dr. Brooks-Warren. Accordingly, Plaintiff has shown no error in the ALJ's evaluation of such medical opinion.

**E. The ALJ Did Not Violate the Treating Physician Rule**

Plaintiff next argues that the ALJ erred by failing to give controlling weight to the February 11, 2014 opinion of Dr. Stemp, a treating psychiatrist. The ALJ determined that Dr. Stemp's opinion was "not well-supported by medically acceptable clinical diagnostic techniques and it is inconsistent with other substantial evidence in the record." (Tr. 25). She afforded it only "minimal weight" to the extent it is inconsistent with the assessment of Dr. Brooks-Warren, the reviewing psychologist, and the underlying evidence as a whole. Id. In summarizing her reasoning, the ALJ explained that:

> Overall, despite temporary, brief exacerbations in the context of increased substance use, non-compliance with medication management, missed appointments, and social stressors, the mental status exams have been generally unremarkable with minimal objective findings. Dr. Stemp continually advised the [Plaintiff] to abstain from substance use and take medications as prescribed; however, the record is replete with missed appointments, lack of compliance with the medication regimen, and ongoing alcohol and marijuana use. The record does not include comprehensive, ongoing documentation of worsening subjective complaints substantiated by objective findings; moreover, the evidence does not include significant, ongoing emergent or inpatient psychiatric treatment for uncontrolled symptoms with increasing functional limitations. The psychiatric treatment notes do not support the degree of limitations described in Dr. Stemp's medical source statement.

Id.

First, Plaintiff contends that the ALJ's reasoning is unsubstantiated to the extent she relies upon an inconsistency with the assessment of Dr. Brooks-Warren. (Document No. 10-1 at p. 18). She argues that there can be no inconsistency because Dr. Brooks-Warren "failed to describe the degree of impairment in any specific area of functioning." Id. However, as noted previously in Section V, B

supra, this argument is not supported by the record and effectively conceded as such by Plaintiff in her Reply Brief.

Second, Plaintiff argues that the ALJ's conclusion that Dr. Stemp's opinion is not well-supported by "medically acceptable clinical diagnostic techniques" is "overly broad" and "not fairly reviewable." (Document No. 10-1 at p. 19). Under the treating physician rule, the more a medical source presents relevant evidence to support an opinion, the greater the weight given. See 20 C.F.R. § 404.1527(c)(3). Here, Dr. Stemp's opinion acknowledges that a psychological evaluation was not obtained and thus that such an evaluation was not considered in describing the limitations in her functional assessment. (Tr. 987). More to the point, however, is the ALJ's finding that Dr. Stemp's opinion of moderately severe to severe functional limitations is simply inconsistent with a fair reading of the medical evidence. See 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). Here, the ALJ acknowledged that the record evidenced some period of "brief exacerbations in the context of increased substance use, non-compliance with medication management, missed appointments, and social stressors" but reasonably found that the record as a whole did not support the extreme degree of impairment opined by Dr. Stemp. (Tr. 25).

The ALJ accurately noted that the record revealed "generally unremarkable" mental status exams with "minimal objective findings." (Tr. 25). For instance, the records cited generally by the ALJ include an October 2012 treatment note of Dr. Kooper which notes that Plaintiff's mental status examination was much closer to normal than it had been in the past. (Tr. 436). Earlier, in August 2012, Plaintiff did not appear either anxious or depressed to Dr. Hagos. (Tr. 452). A mental status examination done by Dr. Stemp in October 2012 found Plaintiff's mood to be "slightly dysphoric" and that she was "mild to moderately anxious" with "somewhat diminished" concentration and focus. (Tr. 511). She observed Plaintiff to have organized thoughts, good cognitive skills, insight and judgment. Id. In addition, she

"very strongly encouraged" Plaintiff to discontinue alcohol and marijuana use. Id. In July 2013, Dr. Stemp found Plaintiff to be "less anxious" with a "euthymic" or normal mood. (Tr. 817). She observed that Plaintiff's thoughts were organized, speech was logical, and memory and cognitive skills were good. Id. She concluded that Plaintiff was "doing better." Id. In May 2014, Dr. Stemp observed that Plaintiff was "baseline anxious," with a euthymic mood, decreased concentration and focus, and fair memory and cognitive skills. (Tr. 1033). She concluded that Plaintiff appeared to be at "baseline" with ongoing issues with alcohol, marijuana and non-prescribed Klonopin use and again "very strongly advised" Plaintiff to discontinue alcohol and non-prescribed drug usage. Id.

The ALJ was faced with conflicting evidence in this record, and Plaintiff has shown no error in her ultimate decision to adopt the opinion of Dr. Brooks-Warren, the reviewing psychiatrist. "The ALJ's resolution of evidentiary conflicts must be upheld if supported by substantial evidence, even if contrary results might have been tenable also." Benetti v. Barnhart, 193 Fed. Appx. 6, 2006 WL 2555972 (1st Cir. Sept. 6, 2006) (per curiam) (citing Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1 (1st Cir. 1987)). In other words, the issue presented is not whether this Court would have found Plaintiff's impairments to be disabling but whether the record contains sufficient support for the ALJ's findings. Since it does, the ALJ's decision must be affirmed.

**F. The RFC Assessment is Supported by the Record**

Plaintiff contends that "there is no medical expert who has opined as to limitations consistent with" the RFC finding and the corresponding hypothetical question to the VE. (Document No. 10-1 at p. 21). Once again, Plaintiff's argument is based on the unsupported contention that there is a defect in the opinion of Dr. Brooks-Warren. See Section V, B supra. The record is clear that the ALJ gave "considerable weight" to the opinion of Dr. Brooks-Warren, and that her opinion appropriately supports both the RFC findings and hypothetical question. Ultimately, Plaintiff's challenge to the ALJ's

evaluation of the medical opinion evidence inappropriately asks this Court to re-weigh the record evidence in a manner more favorable to her. See, e.g., Seavey v. Barnhart, 276 F.3d 1, 10 (1st Cir. 2001) (the ALJ is responsible for weighing the evidence and resolving conflicts in the evidence). The ALJ weighed conflicting evidence in this record, and Plaintiff has shown no error in her ultimate decision to favor the opinion of the reviewing psychiatrist over the opinion of her treating psychiatrist. Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass. 2002) (The ALJ "may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors.").

In particular, Dr. Brooks-Warren opined that Plaintiff was limited to understanding and remembering simple instructions, and attending and concentrating for periods of two hours, (Tr. 104), and the ALJ's RFC finding limited Plaintiff to work involving simple tasks. (Tr. 18-19). Dr. Brooks-Warren opined that Plaintiff was moderately impaired in her ability to interact appropriately with the general public (Tr. 103-104), and the ALJ's RFC finding limited Plaintiff to working on object-oriented tasks with only occasional interaction with the general public. (Tr. 19).

In her Reply Brief, Plaintiff shifts gears[2] and argues that the RFC finding is flawed because it does not address her ability to meet "customary work pressures." (Document No. 15 at p. 7). However, while Dr. Stemp opined that Plaintiff was severely limited in that regard, Dr. Brooks-Warren found only moderate limitations in the area of sustained work concentration and persistence and an ability to adapt to routine workplace changes. (Tr. 103-104). The hypothetical posed to the VE was reasonably based on these findings and included a moderate limitation in the area of workplace concentration, persistence

---

[2] Pursuant to the Scheduling Order in this case (Document No. 9), a reply brief is permitted to address issues raised in Defendant's Brief and not fully discussed in Plaintiff's initial Brief. It is not an opportunity to raise new arguments in support of remand. While Plaintiff's Reply Brief appears to contain some new arguments, which might be stricken as improperly raised, the Court has chosen to address them on the merits.

or pace. (Tr. 68). Since the ALJ's RFC finding is adequately supported by a reasonable reading of the record evidence, it is supported by substantial evidence and must be affirmed.[3]

**VI. CONCLUSION**

For the reasons discussed herein, I recommend that Plaintiff's Motion for Reversal (Document No. 10) be DENIED and that Defendant's Motion to Affirm (Document No. 13) be GRANTED. Further, I recommend that Final Judgment enter in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
December 1, 2016

[3] Plaintiff's final challenge to the ALJ's credibility determination is easily dispatched. The ALJ found Plaintiff's allegations about her limitations to be "not entirely credible." (Tr. 19). The ALJ thoroughly discussed the relevant evidence and reasonably determined that Plaintiff's credibility was compromised by her degree of functioning with activities of daily living. (Tr. 24). In addition, she accurately noted the inconsistency between Plaintiff's testimony that she could not leave her house for two to three days with her recent out-of-state and international travel. Id. The ALJ also appropriately noted that Plaintiff's primary care physician was concerned about her "not telling...the truth" and "playing the system" with regard to manipulating her Adderall prescription. (Tr. 24, 451-452). While Plaintiff may disagree with the weight given to this evidence, it is the ALJ's province to weigh such evidence and evaluate Plaintiff's overall credibility, and Plaintiff has shown no error in that regard.